UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| AXA XL INSURANCE COMPANY, a/s/o Robert Bosch, LLC, and ROBERT BOSCH, LLC, | |
| Plaintiffs, | 22 Civ. (    ) |
| - v. - | **COMPLAINT** |
| QUALITY LOGISTICS, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiffs, AXA XL Insurance Company ("Axa") and Robert Bosch, LLC ("Bosch"), by and through their undersigned attorneys, allege upon information and belief as follows:

INTRODUCTION

1. This is an action for breach of contract of interstate motor carriage arising from damage to 17,820 printed circuit boards ("Cargo") owned by Bosch, insured by Axa, and tendered to Quality Logistics, Inc. ("Quality Logistics") for interstate motor carriage from Texas to South Carolina.

PARTIES

2. Bosch was and is an Illinois corporation with an office for the transaction of business at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331.

3. Bosch owned the Cargo.

4. Axa was and is a Delaware corporation with an office for the transaction of business at 200 Liberty Street, New York, New York 10281.

5. Axa insured the Cargo, paid Bosch's losses resulting from the incident detailed herein, and is thereby subrogated to Bosch's rights to the extent of that payment.

6. Bosch and Axa bring this action on their own behalves and as agents or trustees on behalf of all having an interest in the subject shipment.

7. Quality Logistics was and is a South Carolina company with an office for the transaction of business at 2131 Woodruff Road, Suite 2100-182, Duncan, South Carolina 29607.

8. Quality Logistics was and is registered with the United States Department of Transportation as an interstate carrier with U.S.D.O.T. number 63419.

9. Quality Logistics is the interstate motor carrier that transported the Cargo pursuant to an Agreement for Motor Carrier Services, Contract # 84121013 ("Agreement") it entered with Bosch.

## JURISDICTION & VENUE

10. This action involves interstate transportation of goods by motor carrier. This Honorable Court has jurisdiction to 49 U.S.C. § 14706 (the "Carmack Amendment") and 28 U.S.C. § 1331.

11. Venue is proper pursuant the forum-selection clause in the Agreement.

## BACKGROUND

12. On 10 October 2014, Bosch entered into the Agreement with Quality Logistics.

13. At all times relevant hereto, the Agreement was in full force and effect.

14. Bosch and Quality Logistic amended the Agreement on 8 January 2016 to address Temperature and Humidity Controlled Shipments.

15. That Amendment provides, in pertinent part, as follows:

**Temperature and Humidity Controlled Shipments**

a. [Quality Logistics] is experienced in transporting temperature and humidity controlled products and understands and agrees that: delivery time requirements and temperature and humidity specifications are critical and that failure to comply with either or all time requirements temperature and humidity specifications may result in partial or total damage to the shipment and partial or total rejection of a shipment; temperature and humidity controlled products are commonly subject to strict

2

> quality control specifications that may require destruction of the entire shipment in the event required temperatures and humidity levels are not maintained, eliminating the ability to salvage the shipment on whole or in part; alternatively, rejection of the entire load due to quality control may allow for salvage but at a significantly reduced price.
>
> \* \* \*
>
> c.  Carrier accepts all risk of loss for loading and transporting shipments at incorrect temperatures and humidity.
>
> d.  Carrier will transport perishables at the required constant temperature and humidity or within the allowed temperature and humidity range during the entire period of transportation.
>
> e.  Carrier shall be responsible for the required security, (including seals) and temperature and humidity control protection and provide Shipper with immediate notice of any alleged or actual non-compliance.
>
> f.  Carrier shall be liable to BOSCH for the loss, damage, injury or theft to cargo occurring while in the custody, possession or control of Carrier or for hire unloading service hereunder or resulting from Carrier's performance of or failure to perform the services provided for in this agreement. Product temperature and humidity is a material aspect of this agreement and must be within the specified ranges when carrier delivers such product to the Consignee or it will be considered damaged, regardless of any other measure of product quality. Carrier accepts and agrees that any load rejected due to temperature and humidity of the product at delivery due to the quality control standards of BOSCH are damages to the product that will be paid by the Carrier, less any salvage if the load is not destroyed, notwithstanding any other measure of product quality.
>
> \* \* \*

Agreement, Amendment 2, Clause 1.

16. The Amendment also provides that "the parties consent to the jurisdiction of the state and federal courts of the State of Michigan and also consent to service of process by mail for purposes of legal proceedings." *Id.*, Clause 2.

3

17.     In or around July 2020, Bosch hired Quality Logistics to transport the Cargo from Bosch's facility in El Paso, Texas to another Bosch facility in Anderson, South Carolina.

18.     On 9 July 2020, Quality Logistics, in consideration of certain agreed freight charges, picked up, received, and accepted the Cargo, then in good order and condition, at Bosch's facility in El Paso and agreed to carry the Cargo to Anderson, South Carolina.

19.     Upon delivery in Anderson, South Carolina on 13 August 2020, one month after shipping, Bosch determined the Cargo arrived in off temperature condition.

20.     The Cargo was, therefore, deemed a total loss.

21.     As a result, Bosch suffered losses totaling $235,085.16 in damages, as nearly as can now be determined.

22.     Bosch submitted a claim to Quality Logistics for its losses on 19 November 2020.

23.     Quality Logistics has not denied or otherwise responded to that claim.

24.     Bosch submitted a claim to its insurer, Axa, for its losses, and Axa paid Bosch $210,100.16 ($235,085.16 less Bosch's $24,985 deductible) to settle the claim.

25.     Axa thereby became subrogated Bosch's rights to the extent of that payment.

26.     Bosch retains uninsured losses in the amount of its $24,985 deductible.

CAUSE OF ACTION

BREACH OF THE AGREEMENT FOR MOTOR CARRIAGE
SUBJECT TO THE CARMACK AMENDMENT

27.     Paragraphs 1 through 26 are incorporated by reference as though fully set forth at length herein.

28.     As motor carrier of goods for hire, Quality Logistics was obligated by the Carmack Amendment and the terms of the Agreement to properly and safely transport, handle,

carry, keep, care for, discharge, and deliver the Cargo in the same good order and condition as when received by it.

29. Quality Logistics breached those duties by failing to deliver the Cargo in the same good order and condition as when received by it.

30. As a direct and proximate cause of Quality Logistics' breach of its duties under the Carmack Amendment and the Agreement, Plaintiffs sustained damages, as nearly can now be determined, no part of which has been paid although duly demanded, in the sum of $235,085.16.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant in the sum of $235,085.16, plus interest, costs, disbursements, and such other and further relief as this Court may deem just and proper.

<u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:  Saginaw, Michigan  
        August 12, 2022

REINERT & REINERT  
Attorneys for Plaintiffs

By: <u>*s/ Joshua M. Reinert*</u>  
Joshua M. Reinert  
3434 Davenport Ave.  
Saginaw, MI 48602  
Tel. 989-799-8860  
Fax: 989-799-8861  
jreinert@mcreinert.com

5